# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

WARREN KEITH HENNESS,

      Petitioner,

:

Case No. 2:01-cv-043

    -vs-

:

Magistrate Judge Michael R. Merz

MARGARET BAGLEY, Warden[1],

      Respondent.

:

## DECISION AND ORDER

This capital habeas corpus case is before the Court on Petitioner's Motion for Relief from Judgment (Doc. No. 162), the Warden's Response in Opposition (Doc. No. 168), Petitioner's Reply (Doc. No. 169), and Petitioner's Notice of Additional Authority (Doc. No. 170), calling the Court's attention to *Trevino v. Thaler*, ___ U.S. ___, 133 S. Ct. 1911, 185 L. Ed. 2d 1044 (2013).

Although the Motion is post-judgment, it is within the decisional authority of the Magistrate Judge because this case was referred under 28 U.S.C. § 636(c)(Doc. No. 99). Jurisdiction was returned to this Court by the Sixth Circuit's issuance of its Mandate (Doc. No. 160).

---

[1] Petitioner's counsel have *sua sponte* amended the case caption to reflect that Norm Robinson has succeeded Margaret Bagley as Henness' custodian. The Court acknowledges the substitution of parties which is an automatic result of the change of custodians. Fed. R. Civ. P. 25. That does not, however, result in a change of the caption which will remain "Henness v. Bagley."

1

**Procedural History**

Richard Myers was shot to death in Columbus, Ohio, on or about March 20, 1992. Petitioner Henness was indicted on three counts of aggravated murder arising from that death, along with counts of kidnapping and aggravated robbery. He was convicted by a jury and sentenced to death in January 1994. The murder having occurred before January 1, 1995, Henness had direct appeals to both the Ohio Tenth District Court of Appeals and the Ohio Supreme Court, both of which were unsuccessful. *State v. Henness*, 1996 Ohio App. LEXIS 408 (10th Dist. 1996); *State v. Henness*, 79 Ohio St. 3d 53 (1997). Henness' petition for post-conviction relief was denied by the trial court on *res judicata* grounds, a decision affirmed on appeal. *State v. Henness*, 1999 Ohio App. LEXIS 4374 (10th Dist. 1999). Both the Ohio Supreme Court and the United States Supreme Court declined further review. *State v. Henness*, 87 Ohio St. 3d 1491 (2000); *Henness v. Ohio*, 530 U.S. 1234 (2000). Henness also filed an unsuccessful application to reopen his direct appeal under Ohio R. App. P. 26(B) to assert ineffective assistance of appellate counsel, but the application was denied.

Henness filed his original Petition for Writ of Habeas Corpus in this Court on January 16, 2001 (Doc. No. 8) and his Amended Petition on July 13, 2004 (Doc. No. 86). This Court denied relief on October 31, 2007 (Doc. No. 140). The Sixth Circuit affirmed that decision on July 6, 2011. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011). The United States Supreme Court denied certiorari on April 23, 2012. *Henness v. Robinson*, ___ U.S. ___, 132 S. Ct. 1970, 182 L. Ed. 2d 822 (2012). The Sixth Circuit issued its mandate May 22, 2012 (Doc. No. 160). The instant Motion followed on March 19, 2013 (Doc. No. 162).

**Analysis**

Petitioner brings the instant Motion for Relief from Judgment under Fed. R. Civ. P. 60(b)(6) based on the Supreme Court's decision in *Martinez v. Ryan*, 566 U.S. ___, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012).[2]

In *Landrum v. Anderson*, 2012 U.S. Dist. LEXIS 118501 (S.D. Ohio Aug. 22, 2012), this Court adopted a four-factor test for deciding 60(b) motions relying on *Martinez*. Henness structures his argument to show he meets those factors and the Court will structure this decision around them.

**Ohio's Process for Raising Ineffective Assistance of Trial Counsel Claims Comes Within *Martinez***

At the time of the Court's dismissal on October 31, 2007, deficient performance of counsel at the post-conviction stage could not be considered to excuse a procedural default at that stage because there was no constitutional right to effective assistance in post-conviction. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). There still is not. However, in *Martinez v. Ryan*, 566 U.S. ___, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012), the Supreme Court held:

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To overcome

---
[2] *Martinez* was decided March 20, 2012, but the instant Motion was not filed until March 19, 2013. Petitioner gives no explanation for waiting an entire year to file the Motion.

> the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. Cf. *Miller-El v. Cockrell*, 537 U. S. 322, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (describing standards for certificates of appealability to issue).

132 S. Ct. at 1318-1319. *Martinez* does not create a new right to effective assistance of post-conviction counsel. Instead, it permits a habeas petitioner who has been found to have procedurally defaulted on an ineffective assistance of trial counsel claim to offer the ineffective assistance of post-conviction counsel as excusing cause. *Turner v. Hudson*, 2012 U.S. Dist. LEXIS 150319, *9 (S.D. Ohio Oct. 18, 2012).

*Martinez* does not apply to an Ohio case where the ineffective assistance of trial counsel claim not only could have been but was raised on direct appeal. *Moore v. Mitchell*, 708 F.3d 760 (6th Cir. 2013):

> In *Martinez*, the Supreme Court "narrow[ly]" answered a "precise question": "whether ineffective assistance in an initial-review collateral proceeding on a claim of ineffective assistance at trial may provide cause for a procedural default in a federal habeas proceeding." 132 S. Ct. at 1315. The Court carefully defined "initial review collateral proceeding" to mean state court proceedings that, by operation of state law, "provide the first occasion to raise a claim of ineffective assistance of counsel" because the state "barred the defendant from raising the claim on direct appeal." *Id*. at 1315, 1320. The Court concluded that, in that circumstance, inadequate assistance of *collateral* counsel may constitute cause to excuse the procedural default of an ineffective assistance of *trial* counsel claim, thus allowing federal courts to look past the default on habeas review and at the merits of the claim. *Id*. at 1320. But the Court repeatedly emphasized the "limited nature" of its holding, which "addresse[d] only the constitutional claims" present where the state has banned a defendant from raising his ineffective assistance of trial counsel claim on direct appeal. *Id*.

*Id.* at 785.

In *Moore* the Sixth Circuit declined to expand *Martinez* beyond the Arizona statutory

scheme where no ineffective assistance of trial counsel claim could be raised on direct appeal.

However, in *Trevino v. Thaler*, ___ U.S. ___, 133 S. Ct. 1911, 185 L. Ed. 2d 1044 (2013), the Supreme Court extended *Martinez* to the Texas system where presentation of an ineffective assistance of trial counsel claim dependent on matter outside the record was "practically" required to be brought in post-conviction rather than on direct appeal. [3]

This Court has previously held that *Martinez* applies to the Ohio post-conviction review system. In *Landrum v. Anderson*, 2012 U.S. Dist. LEXIS 118501 (2012), and 2012 U.S. Dist. LEXIS 154039 (2012), this Court read *Martinez* as applying to a case where, because of the way Ohio post-conviction review law is structured, the ineffective assistance of trial counsel claim had to be brought in post-conviction. *Id.* at 11. *Moore v. Mitchell*, 708 F.3d 760 (6th Cir. 2013), relied on by the Warden, is not to the contrary. There the petitioner both could and did raise his ineffective assistance of appellate counsel claim on direct appeal.

Henness' *Martinez*-based claim is cognizable in this Court.

**Henness' Ineffective Assistance of Counsel Claim Has "Some Merit" or is "Substantial."**

*Martinez* requires the habeas court to find that the underlying ineffective assistance of trial counsel claim has "some merit" or is "substantial." Landrum easily met that test because the Court had granted relief on Landrum's ineffective assistance of trial counsel claim. The Sixth Circuit reversed not on the merits, but because it found procedural default in post-conviction counsel's failure to raise the claim. *Landrum v. Mitchell,* 625 F.3d 905 (6th Cir.

---

[3] In *Trevino*, Justice Breyer described a method by which a Texas defendant can add matter to the record by a motion for new trial which must be made within thirty days of judgment. In Ohio a new trial motion is available to defendants on a more generous deadline and a denial of a new trial motion is appealable. If the denial of a new trial on newly-discovered evidence happened before the direct appeal was heard, the appeals could be consolidated, so that the new evidence would be before the court of appeals at the same time as the direct appeal. This is only slightly more favorable to a defendant than the Texas procedure.

2010).

This case is quite different. Here, no court has yet found merit to any ineffective assistance of trial counsel claim of Henness'.

The only claim of ineffective assistance of counsel at the trial phase of his case which Henness has ever pled in this Court was made in his First Ground for Relief which has six sub-claims:

> Warren K. Henness was denied his right to the effective assistance of counsel at the pretrial and trial phases of his capital trial in violation of the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments.
>
> A. Trial counsel was [sic] ineffective for failing to hire an experienced investigator to assist with pretrial preparation.
>
> B. Trial counsel was [sic] ineffective in the handling of the pretrial suppression hearing.
>
> C. Trial counsel was [sic] ineffective in failing to object, on a number of occasions, to inadmissible bad character evidence at Petitioner's trial.
>
> D. Trial counsel was [sic] ineffective in failing to file a motion to suppress based on the illegal stop and arrest of Petitioner.
>
> E. Trial counsel was [sic] ineffective in that they failed to investigate the mental and emotional state of Tabatha Henness, the main witness against Petitioner.
>
> F. Trial counsel was [sic] ineffective in that they (same comment as in (E) above) failed to investigate and/or inquire into blood stain evidence that was recovered from the crime scene.

(Amended Petition, Doc. No. 86, PageID 87-97.)

In denying habeas corpus relief, this Court found that sub-claims A, E, and F were procedurally defaulted by Henness' failure to bring them in post-conviction proceedings and the default was not excused (Decision, Doc. No. 140, PageID 1276-1277, 1287-1288). Sub-claims

B, C, and D were also dismissed, but are not presented in the instant Rule 60(b) Motion at all. The Sixth Circuit affirmed this Court's dismissal, but no certificate of appealability had been issued on Sub-claim A, E, or F. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011).

Henness now presents a different claim of ineffective assistance of trial counsel. He seeks to reopen the judgment to litigate a claim of ineffective assistance of trial counsel for failure to investigate. Tellingly, he does not seek to re-plead his First Ground for Relief by amendment, which would raise both statute of limitations and second or successive petition problems. Instead, he treats the failure-to-investigate claim he now wishes to litigate as if it were encompassed by the First Ground for Relief in the Amended Petition

As the instant Motion tells the tale, lead trial counsel David Bodiker was paired for trial of this case with W. Joseph Edwards, a second-chair attorney forced on him by the trial judge when he would have preferred someone else (Motion, Doc. No. 162, PageID 1613, relying on Edwards' Affidavit of March 19, 2013, attached to the Motion as Exhibit 3, PageID 1641-1644). Bodiker did not collaborate with Edwards and kept him from having any contact with Henness between September 24, 1992, and October 26, 1993, just before trial; during that interval, Edwards did "little to no work on the case, much less any investigation," again at Bodiker's instruction *Id.* at PageID 1614, citing Edwards' deposition, taken and filed in this case March 17, 2003. Throughout this period, in casual courthouse conversations, "Bodiker would tell [Edwards] the case was going to end in a plea agreement and that Edwards should not do anything." *Id.* at PageID 1615. In October 1993, Edwards learned that no trial-phase investigation had been done by Bodiker nor had he hired an investigator. *Id.* Bodiker told David Graeff, whose ineffective assistance in post-conviction is asserted in the Motion, that he decided not to hire an investigator because he was "convinced Henness was going to plead guilty to the

7

plea offer, . . . that would result in him serving a sentence in the low 20s-to-life." (Graeff Affidavit of March 12, 2013, attached to the Motion as Exhibit 1, ¶¶ 6-7, PageID 1632.) Graeff had known Bodiker as a fellow criminal defense attorney in Columbus since the 1970's. *Id.* at ¶ 3. "Based on his knowledge of David Bodiker's relationship with Keith Henness at the time, [Graeff] firmly believe[d] that it was just a matter of time before Keith Henness accepted the plea offer of the prosecution." *Id.* at ¶ 8.

To prove Bodiker's lack of investigation, Henness attaches Bodiker's time sheets for the relevant period. (Motion, Doc. No. 162, PageID 1610, citing Doc. No. 70, Vol. II, pp. 19-30.[4]) Among the possible items of investigation which are not referenced in Bodiker's time sheets and therefore presumably not done are interviews with prosecution witnesses Robert Curtis, DeQuanto Berry, and Roland Fair. *Id.* at PageID 1612. Bodiker did talk once with Tabatha Henness, but did not learn much and assertedly did not try again. *Id.*[5]

To prove that investigation would have been fruitful, Henness presents the scientific opinion of Gary Rini that the binding and gagging of the victim occurred post-mortem (Motion, Doc. No. 162, PageID 1616-1621, relying on the March 8, 2013, Affidavit of Gary A. Rini, attached as Exhibit 5, PageID 1669-1671.) Henness also relies on statements from Sherry Williamson which, had they been discovered, he says would have assisted in impeaching Tabatha Henness and Robert Curtis. *Id.* at PageID 1621-1623, relying on a sworn interview with Williamson taken on December 10, 2002, and filed in this case at Doc. No. 72, and Henness' testimony at the evidentiary hearing in this case, Doc. No. 128. This evidence, however presented, would allegedly have shown that Tabatha knew Henness was going to use Myers, the

---

[4] This Court adopted electronic filing as of September 1, 2003. Docket entries from before that date have not been digitized (i.e., re-filed electronically) and reference is therefore to the original pagination. Entries after September 1, 2003, have electronically supplied page numbers, shown as "PageID."

[5] At some other point in the record, Bodiker testified that when he tried a second time to talk to Tabatha in jail, he was advised that her attorney had told her not to speak to him.

victim, to help him get Tabatha committed for mental health and substance abuse treatment and this allegedly gave Tabatha a motive to murder Myers. *Id.* at 1623.

The lack of investigation was also allegedly prejudicial because it poisoned the relationship between Henness and Bodiker. *Id.* at 1624, relying on Henness' March 13, 2013, Affidavit, attached as Exhibit 2. Henness does not say why he rejected the plea offer, which would have spared his life. He does claim:

> Bodiker never had any meaningful conversations with me about plea offers from the State. The appellate process was never explained to me either. Prior to trial, I had not had a single conversation with an investigator or mitigation specialist. The closest Bodiker came to providing any advice prior to trial was to tell me that Franklin County juries would never sentence someone to death. Going into trial, I had no idea what Bodiker's strategy was.

(*Id.*, ¶ 9, PageID 1638.)[6] Henness claims he asked "Bodiker to investigate aspects of the State's case. Specifically, I asked Bodiker to investigate the crime scene and told him certain things to look for, such as tools, blood stains and coins." *Id.* at ¶ 7. Henness does not say what would likely have been found or why it was material. He does aver that Bodiker did not hire an investigator despite promising to do so. *Id.* Bodiker's testimony on these points is unavailable because he died January 25, 2008 (The Columbus Dispatch, January 27, 2008, www.dispatch.com visited August 1, 2013.) Bodiker did testify at some length about his reasons for not hiring an investigator in his deposition taken and filed in this case (See docket entry March 20, 2003).

It is far from clear that Henness' ineffective assistance of trial counsel failure-to-

---

[6] As one of the people most involved with litigating capital cases in Ohio, Bodiker would have known that before Henness' trial there were three capital sentences from Franklin County under the current Ohio death penalty legislation. They are Mark Burke's (November 9, 1990), Kevin Scudder's (December 26, 1990); and Carl Haight's (August 21, 1992).

9

investigate claim as he now wishes to litigate it has merit. For one thing, it assumes the information he now presents would have been available to his trial attorneys.

There is no showing that Gary Rini would have given the opinion he now has at the time of trial. He was then a Police Division Commander of the Woodridge, Illinois, Police Department and probably therefore not available as an expert witness for the defense in a capital case in another State. (Curriculum Vitae attached to Rini Affidavit, PageID 1672.) Rini does not offer his opinion to a scientific certainty, nor does he provide supporting material from which a court could decide its admissibility under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), or cognate Ohio rules of evidence.

Henness' prior habeas counsel found Sherry Williamson in Arizona in 2002, but where she was at the time of trial and what she was then prepared to testify to are unknown. Her own credibility as a convicted felon, drug abuser, and former sexual partner of Tabatha Henness would have been severely attacked.

The record shows that Bodiker did have a plea agreement offer from the prosecutor which would have spared Henness' life and there is no testimony (or at least no record references to any testimony) about why Henness declined the offer, aside from the "toxic relationship" explanation now offered. Bodiker's advice to Henness to accept the plea agreement now seems like very good advice. Was it bad advice at the time because Henness and Bodiker did not like one another? Because Henness reasonably believed he could be acquitted on the basis of evidence he now speculates Bodiker could have found?

These doubts stated, the Court cannot say that Henness' ineffective assistance of trial counsel claim is insubstantial or has no merit, particularly because Bodiker's lack of

investigation and prevention of any investigation by Edwards is documented.[7]

**Post-Conviction Counsel's Assistance Was Not Ineffective.**

To prevail on his Rule 60(b) Motion, Henness must show that it was ineffective assistance of post-conviction counsel to omit his failure-to-investigate claim in his post-conviction petition. As Henness recognizes is his burden, he must show that his post-conviction counsel, David J. Graeff, performed deficiently and this deficient performance prejudiced Henness' case (Motion, Doc. No. 162, PageID 1601).

Henness asserts Graeff performed deficiently

> because he filed a rushed, inchoate petition without properly stating the grounds for Henness' [ineffective assistance of trial counsel] claim and without developing the facts to support such a claim. Graeff faltered first by never specifically raising an [ineffective assistance of trial counsel] claim for failure to investigate even though Henness wanted him to do so. Graeff was also ineffective because he failed to investigate such a claim.

(Motion, Doc. No. 162, PageID 1601.)

Henness complains that Graeff, although he filed a post-conviction petition with twenty-four claims for relief, the claims "lacked much, if any, detail and had little or no evidentiary support outside the record, as Ohio law requires." (Doc. No. 162, PageID 1602.) There was, he says, only one claim of ineffective assistance of trial counsel directed to trial phase failures, Claim Twenty-Three, which only cited a couple of examples.

Graeff, it is alleged, "did not attach enough evidentiary support to garner discovery or an evidentiary hearing . . . ." *Id.* at 1602. Only three affidavits were attached, from Dr. Jeffrey

---

[7] Edwards' duty to Henness was independent of Bodiker's. Edwards' affidavit does not say why he acquiesced in Bodiker's direction. (His deposition testimony was that he did not want to step on any toes.)

Smalldon and from Bodiker and Edwards. Not surprisingly, those affidavits do not confess any of the deficiencies in trial phase performance of which Bodiker and Edwards are now accused.

Henness' present counsel criticize Graeff for not communicating with Henness prior to filing the petition for post-conviction relief or supporting it with an affidavit from Henness himself (Motion, Doc. No. 162, PageID 1603-1606). They note that Graeff's time to file was constricted by the Ohio General Assembly's adoption of a one-year statute of limitations for Ohio Revised Code § 2953.21 petitions such that anyone sentenced before September 21, 1995, had to file by September 21, 1996. Graeff had accepted appointment for all of Henness' post-trial state litigation when requested to do so by Bodiker who had become the Ohio Public Defender, creating a conflict of interest for anyone in that office to handle the appeals and post-conviction petition (Graeff Affidavit, Exhibit 1 to Doc. No. 162, ¶¶12-13, PageID 1633). Graeff actually filed the Petition on September 19, 1996, two days shy of the limitations date.

As noted, the Petition Graeff filed contains twenty-four[8] claims for relief and comprises fifty-seven pages plus over twenty pages of exhibits. Claim Twenty-Three contains a number of specific allegations of ineffective assistance of trial counsel including (1) failure to object to admission of evidence of forgeries of the victim's name in using his credit cards post-mortem even though Henness had pled guilty to the forgery charges; (2) failure to recognize the distinction between marital communications between Tabatha and Petitioner which were excludable under the marital communications privilege as opposed to communications in the presence of a third party, which would waive the privilege; and (3) failure to investigate and properly interview Tabatha Henness to determine if she would be testifying voluntarily. (Doc. No. 171, PageID 1810-1811.)

---

[8] At various points the motion papers refer to "twenty-three" claims. There are actually twenty-four (See copy re-filed electronically at Doc. No. 171, PageID 1758-1815).

Graeff now says that to the best of his recollection he had three months to prepare the post-conviction petition (Graeff Affidavit, Exhibit 1 to Doc. No. 162, ¶ 13, PageID 1633). But he had been appointed to represent Henness on direct appeal along with Barry Wilford on January 27, 1994 (Return of Writ Appendix Vol. III, p. 12). While Henness presently relies on Graeff's memory for the amount of time he had available, he provides no record citation for the date of appointment as post-conviction counsel, nor does Graeff reference any of his own records as corroboration for a date in June 1996. January 27, 1994, the documented date of Graeff's appointment on direct appeal, is about thirty months prior to the filing deadline. Graeff certainly would have become familiar with the case and the record in that amount of time. Given that familiarity, three months is adequate to prepare a post-conviction petition.

Henness complains personally about the post-conviction process (Henness Affidavit, Doc. No. 162, Exhibit 3, PageID 1637-1639.) He avers that out of fear that no post-conviction petition would be filed, he sent the trial court a motion for extension of time to file. *Id.* at ¶ 1639. Although he knew Graeff was handling the direct appeal, he says he did not know Graeff was also handling post-conviction. *Id.* at ¶ 12. He never indicates he inquired about post-conviction from Graeff or provided Graeff with any indication of what extra-record matters should be investigated, either before or after the petition was filed.[9]

When the post-conviction petition was filed, Judge Michael Watson[10] had succeeded Judge Thompson as the Franklin County Common Pleas Judge assigned to Henness' case. He denied the post-conviction petition on March 4, 1997. *State v. Henness*, Case No. 92CR-06-

---

[9] Almost six months expired between the filing of the petition when it was furnished to Henness and the date Judge Watson dismissed it. That certainly was adequate time for Henness to notice deficiencies and ask Graeff to amend. Henness was aware of the September 21, 1996, deadline for filing any Ohio Revised Code § 2953.21 petition on behalf of those convicted before September 21, 1995, so to the extent he regarded the petition actually filed as insufficient, he could reasonably be expected to seek an amendment.

[10] Judge Watson served on the Franklin County Common Pleas Court from January 1, 1996, until April 30, 2003. He then served for just over a year on the Ohio Tenth District Court of Appeals before being appointed as a judge of this Court on October 1, 2004. See biography at www.ohsd.uscourts.gov.

13

2948 (unpublished, copy at Return of Writ, Vol. VI, pp. 104-107). Judge Watson denied Henness an evidentiary hearing "because he has not submitted sufficient evidentiary materials regarding his claims. . . . not even . . . his own affidavit." *Id.* at p. 106, *citing State v. Jackson*, 64 Ohio St. 2d 107 (1980). Recognizing the Ohio criminal *res judicata* rule from *State v. Perry*, 10 Ohio St. 2d 175 (1967), Judge Watson held:

> [T]he myriad of constitutional violations alleged by the defendant-petitioner could have been or were raised on appeal to the Tenth District Court of Appeals. Additionally, it is not necessary for the Court to consider the merits of the defendant-petitioner's ineffective assistance claim, because the claim of errors is not based on evidence outside the record. Defendant-petitioner?) does claim that counsel was deficient for failing to suppress evidence, failing to object to testimony by the defendant-petitioner's spouse, [and] failure to investigate the defendant petitioner's spouse. However, none of these claims are supported by or based on evidence outside the record.
>
> As such, the court concludes that the defendant-petitioner's constitutional claims and claim of ineffective assistance are barred by the doctrine of *res judicata*. The issues should have been addressed on appeal, and defendant-petitioner has not pointed to some evidence outside the record that should be considered by the court for a fair determination of the issue.

*State v. Henness*, Case No. 92CR-06-2948 (unpublished, copy at Return of Writ, Vol. VI, pp. 106-107).

Mr. Graeff appealed, complaining that Judge Watson could not possibly have reviewed the whole record, that an evidentiary hearing and discovery were required by law, and that the *res judicata* ruling was in error. The Tenth District Court of Appeals nevertheless affirmed with one judge dissenting on whether to allow discovery from Bodiker and Edwards. *State v. Henness,* 1999 Ohio App. LEXIS 4374 (10th Dist. Sept. 23, 1999). It found no need to consider Mr. Bodiker's post-conviction affidavit about his consultations with Tabatha Henness regarding

her willingness to testify because that subject had been thoroughly explored at trial and Bodiker had an opportunity to examine her on the subject. *Id.* at 10-11. It similarly found the issue of the breakdown of the attorney-client relationship between Henness and his trial lawyers had been thoroughly explored on direct appeal. *Id.* at 13-14.

Although *Martinez* did not recognize a new constitutional right to effective assistance of counsel in post-conviction, the Supreme Court said the standard from *Strickland v. Washington*, 466 U.S. 668 (1984), would apply, but it gave no elaboration of how it would apply differently, if at all, in the post-conviction context as opposed to trial. *Martinez*, 132 S. Ct. at 1318. The Sixth Circuit has yet to articulate any standards for evaluating the performance of post-conviction counsel.

Nor has Petitioner offered substantial assistance in this regard. He lists all of the things Graeff did not do, but does not cite authority for the proposition that it was ineffective assistance to fail to do any of those things. For example, Henness complains that Graeff did not submit enough evidence to get discovery or an evidentiary hearing, but fails to suggest how much would have been sufficient in a system where denial of discovery and evidentiary hearings in post-conviction, at least at the time this case was tried, was ubiquitous.

For his assertion that Graeff was obliged to undertake a "thorough investigation," Henness does quote *Couch v. Booker*, 632 F.3d 241 (6th Cir. 2011), to the effect that defense counsel in that case was obliged to do a "'thorough investigation of law and facts relevant to plausible options' for the defense." *Id.* at 246, *quoting Strickland v. Washington*, 466 U.S. 668, 690 (1984). Judge Sutton found the petitioner in that case had, for reasons he cites, a plausible lack-of-causation defense to a murder charge. *Couch* relates to trial defense duties and does not purport to set standards for counsel in post-conviction.

15

Under *Strickland*, counsel's performance is measured by "prevailing professional norms" at the time of the alleged errors. *Rickman v. Bell*, 131 F.3d 1150, 1154 (6th Cir. 1997). Present counsel has shown nothing regarding prevailing professional norms for representation of a capital defendant in post-conviction in Ohio in 1994-1996.

Certainly the post-conviction petition was not "inchoate" as present counsel argue. Henness has not demonstrated that any of the extra-record evidence he presents now would have been available to David Graeff in 1996. As noted above with respect to the merits of the ineffective assistance of trial counsel claim, there is no showing the Rini or Edwards Affidavits or the testimony of Sherry Williamson would have been available then.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Court commanded us to be careful to avoid "the distorting effects of hindsight":

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

Henness has not shown David Graeff provided ineffective assistance, i.e., he has not shown what things Graeff could have done differently that would have had a reasonable probability of changing the outcome of that proceeding.

**Henness Has Not Otherwise Satisfied the Requirements of Fed. R. Civ. P. 60(b)(6).**

Relief should be granted under Fed. R. Civ. P. 60(b)(6) only in unusual circumstances where principles of equity mandate relief, *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990), and the district court's discretion under 60(b)(6) is particularly broad. *Johnson v. Dellatifa*, 357 F.3d 539 (6th Cir. 2004); *McDowell v. Dynamics Corp.*, 931 F.2d 380, 383 (6th Cir. 1991); *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989). Relief is warranted only in exceptional or extraordinary circumstances not addressed by the other numbered clauses of Rule 60. *Dellatifa*, *supra*; *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989).

A change in decisional law such as that wrought by *Martinez, supra*, is usually not, by itself, an extraordinary circumstance. *Agostini v. Felton*, 521 U.S. 203, 239 (1997); *Blue Diamond Coal Co. v. Trs. of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001). While this Court found that the *Martinez* change in the law weighed on the side of granting Rule 60(b)(6) relief in *Landrum, supra*, that was because this Court had granted Landrum relief on the merits of his ineffective assistance of trial counsel claim and was only reversed because the Sixth Circuit found procedural default which, under *Martinez*, was excusable but had not been before that decision.

Petitioner asserts that relief under Fed. R. Civ. P. 60(b)(6) should be granted "when substantial justice will thus be served." (Motion, Doc. No. 162, PageID 1626, *quoting Thompson v. Bell*, 580 F.3d 423, 444 (6th Cir. 2009).) In *Martinez*, the Supreme Court emphasized that, without the exception to *Coleman*, no court would ever have heard Martinez' ineffective assistance of trial counsel claim on the merits. Here no court has ever heard on the merits the ineffective assistance of trial counsel claim Henness **now** makes, but that claim is sufficiently

17

new that it is unexhausted. And while it is not "insubstantial," it is far from persuasive in its present form.

Nor does the fact that this is a death penalty case weigh heavily in favor of relief. Henness' present counsel assert the State had a "weak case against Henness" which allegedly made the failure to investigate "especially unreasonable." The Court does not agree the State's case was weak. Unrefuted post-mortem circumstantial evidence tied Henness to the victim: possession of his car and his credit cards. The State proved Henness knew Myers and had received a firearm of the correct caliber from Curtis, who lived with Henness, shortly before the crime. The State put Henness in possession of a gold wedding band too large for him shortly after the murder and showed Myers' left ring finger was nearly severed. Henness admitted he was at the scene of the crime, although he claimed he did not do the shooting. While there may have been more material with which to impeach Tabatha Henness, it comes from a witness herself very impeachable.

If the Motion for Relief from Judgment were granted, this Court could not decide the ineffective assistance of trial counsel claim in the first instance in any event, because it is based on new evidence presented with the Motion and prior testimony, both deposition and evidentiary hearing testimony taken in this Court, which the Court cannot consider because it has never been presented to the Ohio courts. *Cullen v. Pinholster,* 563 U.S. ___, 131 S.Ct. 1388 (2011). The ineffective assistance of trial counsel by failure to investigate claim Henness now makes is sufficiently different from the claim he previously made in the Amended Petition that this new claim is unexhausted. *Compare Vasquez v. Hillery*, 474 U.S. 254 (1986).

Finally, Henness has not demonstrated that his Motion is timely filed. Fed. R. Civ. P. 60(c)(1) requires that all motions for relief from judgment be filed within a reasonable time after

the judgment has been entered and sets an absolute limit of one year for motions made under Fed. R. Civ. P. 60(b)(1), (2), and (3). The instant Motion was filed on the 364th day after the *Martinez* decision. Current counsel has represented Henness since September 23, 2011, four months before the petition for writ of certiorari was due to be filed in the Supreme Court in this case (Doc. Nos. 156, 157), but well after certiorari had been granted in *Martinez*. Certiorari was denied in this case on April 23, 2012, a month after *Martinez* was decided (Doc. No. 159). Henness' present counsel, whose practice is limited to the representation of Ohio death row inmates, must surely have known of *Martinez* as soon as it was decided. Why did counsel wait for a year after *Martinez* came down to file the instant Motion? No explanation is offered. While the new evidence filed in support of the Motion consists entirely of affidavits signed in March, 2013, that evidence would not qualify as "newly-discovered" if the motion were made under Fed. R. Civ. P. 60(b)(2): Graeff, Edwards, and Henness have all known the facts they aver for many years.[11]

**Conclusion**

The Motion for Relief from Judgment is DENIED. Because the law on ineffective assistance of post-conviction counsel is in its infancy, reasonable jurists could disagree on whether this Court has applied the correct standard and Petitioner is GRANTED a certificate of appealability on that question. If Petitioner desires a certificate of appealability on any other

---

[11] The Court is not told when Rini was retained.

issues, he shall file a motion for such a certificate within ten days from the date this Order is filed.

August 6, 2013.

s/ *Michael R. Merz*<br>United States Magistrate Judge

Case: 2:01-cv-00043-MRM Doc #: 172 Filed: 08/06/13 Page: 20 of 20  PAGEID #: 1873