**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed:  September 08, 2014

Ms. Jessica Lynn Felker
Mr. David C. Stebbins
Mr. Justin Courtney Thompson
Federal Public Defender's Office
10 W. Broad Street, Suite 1020
Columbus, OH 43215

Mr. Seth P. Kestner
Mr. Charles L. Wille
Office of the Ohio Attorney General
150 E. Gay Street, 16th Floor
Columbus, OH 43215

      Re:  Case No. 13-3934, *Warren Henness v. Margaret Bagley*
         Originating Case No. : 2:01-cv-00043

Dear Counsel,

  The court today announced its decision in the above-styled case.

  Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

              Yours very truly,

              Deborah S. Hunt, Clerk


              Cathryn Lovely
              Deputy Clerk

cc:  Mr. John P. Hehman

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0229p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

WARREN K. HENNESS,

    *Petitioner-Appellant,*

v.

MARGARET BAGLEY, Warden,

    *Respondent-Appellee.*

No. 13-3934

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:01-cv-00043—Michael R. Merz, Magistrate Judge.

Argued: June 17, 2014

Decided and Filed: September 8, 2014

Before: BOGGS, SILER, and SUTTON, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Jessica L. Felker, FEDERAL PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellant. Seth Kestner, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Jessica L. Felker, David C. Stebbins, Justin C. Thompson, FEDERAL PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellant. Seth Kestner, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

---

**OPINION**

---

    SILER, Circuit Judge. Warren Henness, an Ohio prisoner under a death sentence, appeals from the district court's denial of his Fed. R. Civ. P. 60(b)(6) motion for relief from a judgment that dismissed his petition for a writ of habeas corpus filed under 28 U.S.C. § 2254.

The district court granted a Certificate of Appealability (COA) on the issue of whether Henness is entitled to Rule 60(b)(6) relief because intervening changes in the law establish cause for the procedural default of his ineffective-assistance-of-counsel claims. We affirm the denial of relief by the district court.

### I.

Henness was convicted of kidnapping, robbing, and murdering Richard Myers. Additional information about the facts underlying his convictions can be found in the Ohio Supreme Court's opinion in his direct appeal. *State v. Henness*, 679 N.E.2d 686, 689-91 (Ohio 1997).

### II.

Henness was indicted for three counts of aggravated murder: (1) murder with prior calculation and design; (2) aggravated robbery-murder; and (3) kidnap-murder. He also was charged with aggravated robbery, kidnapping, four counts of forgery, and having a weapon while under disability. Henness pled guilty to the forgery counts and elected to try the weapon charge before the trial court (which found him guilty). A jury convicted him of the remaining counts, and the jury recommended that Henness be sentenced to death. The trial court adopted this recommendation and sentenced Henness accordingly. The Ohio Court of Appeals affirmed Henness's convictions and sentence of death on direct appeal, *State v. Henness*, No. 94APA02-240, 1996 WL 52890 (Ohio Ct. App. Feb. 6, 1996) (unreported opinion), as did the Ohio Supreme Court. *Henness*, 679 N.E.2d at 700.

In 1996, Henness filed a state post-conviction petition, which the trial court denied. The Ohio Court of Appeals affirmed the trial court's denial of Henness's petition. *State v. Henness*, No. 97APA04-465, 1999 WL 739588 (Ohio Ct. App. Sept. 23, 1999) (unpublished opinion). The Ohio Supreme Court denied Henness permission to further appeal this decision.

In 2001, Henness's counsel filed a motion to reopen his direct appeal under Ohio App. R. 26(B) with the Ohio Court of Appeals. Henness also filed a pro se Rule 26(B) motion. The court denied both motions because Henness had not established good cause for his failure to

timely file the motions. Although Henness attempted to appeal this decision to the Ohio Supreme Court, the court rejected his appeal as untimely.

### III.

In 2001, Henness filed his § 2254 petition, alleging numerous violations of his constitutional rights. Both parties consented to plenary magistrate judge jurisdiction under 28 U.S.C. § 636(c). The district court subsequently dismissed Henness's petition as meritless. *Henness v. Bagley*, No. 2:01-CV-043, 2007 WL 3284930 (S.D. Ohio Oct. 31, 2007). On appeal, this court affirmed the district court's decision. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011).

In March 2013, Henness filed his current Rule 60(b)(6) motion, seeking to revisit the previous dismissal of several ineffective assistance of trial counsel claims. The district court denied the motion as meritless. *Henness v. Bagley*, No. 2:01-CV-043, 2013 WL 4017643 (S.D. Ohio Aug. 6, 2013). Henness has filed a timely appeal.

### IV.

Federal Rule of Civil Procedure 60(b)(6) is a catchall provision, which provides for relief from a final judgment for any reason justifying relief not captured in the other provisions of Rule 60(b) (which are inapplicable to Henness's present motion). *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 750 (6th Cir. 2013), *cert. denied*, 134 S. Ct. 998 (2014). Rule 60(b)(6) only applies in exceptional or extraordinary circumstances where principles of equity mandate relief. *Id.* "The decision to grant Rule 60(b)(6) relief is a case-by-case inquiry that requires the trial court to intensively balance numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." *Id.* (quoting *Thompson v. Bell*, 580 F.3d 423, 442 (6th Cir. 2009)). While this court reviews the denial of a Rule 60(b) motion for an abuse of discretion, the district court's discretion in deciding a Rule 60(b)(6) motion is especially broad due to the underlying equitable principles involved. *Tyler v. Anderson*, 749 F.3d 499, 509 (6th Cir. 2014).

## V.

In his amended § 2254 petition, Henness raised, in pertinent part, the following ineffective assistance of trial counsel claims:

**Issues Related to Ineffective Assistance of Trial Counsel**

**First Ground for Relief: Warren K. Henness was denied his right to the effective assistance of counsel at the pretrial and trial phases of his capital trial in violation of the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments.**

The Sixth Amendment to the United States Constitution guarantees any defendant in a criminal case the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668 (1984). This right is violated when defense counsel's performance falls below an objective standard of reasonableness and the client is prejudiced by counsel's breach of duty. Strickland, 466 U.S. at 690, 696. If a defendant can show that, but for counsel's ineffective performance, there would have been a difference in the outcome of the trial, then he has established prejudice within the meaning of Strickland. Williams v. Taylor, 120 S. Ct. 1495 (2000).

**A. Trial counsel was ineffective for failing to hire an experienced investigator to assist with pretrial preparation.**

With regard to ineffective assistance of counsel during the pretrial phase, it appears that defense counsel never hired an investigator who could assist with such things as investigating the scene of the homicide, speaking with prosecution witnesses or taking photographs that would corroborate what the theory of the defense case seemed to be. In fact, it is current counsel's understanding that the scene of the crime was never visited by anyone from the defense team prior to trial. The only time anyone from the defense team went to the scene was when the defense attorneys accompanied the jurors on the jury view.

The prejudicial effect of the lack of an investigator became apparent several times throughout the trial. The most damaging testimony in the case was given by the Petitioner's wife, Tabatha Henness, who testified that Petitioner had admitted to her that he shot the victim.

Petitioner's wife was questioned outside the presence of the jury regarding whether she was making a voluntary election to testify against her husband. She indicated she was not concerned about actions the prosecutor might attempt to take against her if she decided not to testify. Through his questioning, and in comments to the court, defense counsel implied that he had a phone conversation with Petitioner's wife prior to her testimony in which he was led to believe otherwise. . . . If, in fact, this was true and an investigator from the defense had been available to speak with Tabatha Henness, this investigator could have testified that a voluntary election to testify was not being made because

Petitioner's wife was concerned about actions being taken against her by the prosecutor. The result would have been that she would not have been permitted to testify. The prosecution's case on the murder would have collapsed. As it was, defense counsel was stuck with her answers.

The victim suffered five gunshot wounds to the head, one of which was fatal. Four .25 cal. casings were found scattered in various places around the homicide scene. One casing was never found by the police. Although there was testimony that the casings recovered were all fired from the same gun, there was also testimony that the weapon the police confiscated was not the murder weapon. An experienced crime scene investigator may have been successful in finding that missing casing.

The scene of the homicide was an abandoned building which held items that could be removed and sold. During trial, defense counsel had questioned one of the police officers about motors that could be taken and if bolts to those motors were loosened or missing. The witness claimed to have no knowledge of that. Because of not having an investigator, defense counsel could not follow-up on the police officer's answers with their own findings. In his unsworn statement, the Petitioner told the jurors that he had been to the scene of the murder not to kill, but to steal motors. He had taken some tools with him and left them there. . . . An investigator would have visited the scene and could have verified this statement. This is important, because even though Petitioner's wife put him at the scene with her testimony and said Petitioner stated that he killed the victim because the victim "made him do it", an investigator would have been able to demonstrate a different motive for Petitioner being at the scene, thus calling into question the premeditation element to the killing and the kidnapping, thereby calling into question the appropriateness of the death penalty. . . .

**E. Trial counsel was ineffective in that they failed to investigate the mental and emotional state of Tabatha Henness, the main witness against Petitioner.**

Petitioner contends that trial counsel were ineffective because they did not adequately investigate the background of Tabatha Henness and did not effectively use information they may have possessed.

Had trial counsel investigated the background of Tabatha Henness, they would have discovered that she had mental health and emotional issues that could have been brought out on cross-examination, both when she told the trial judge that she was making a voluntary election to testify against Petitioner and when she testified in the state's case-in-chief. Specifically, Tabatha Henness had been treated for mental health problems. In the 21 months between Petitioner's arrest and her testimony at the trial, Ms. Henness had threatened or attempted suicide and was on medication – medication that she chose not to take at the time of Petitioner's trial. This information that trial counsel did not find out or did not use could have been used to show Tabatha Henness was not making a knowing and

>voluntary election to testify in the first place and then to discredit her testimony at trial.
>
>F. Trial counsel was ineffective in that they failed to investigate and/or inquire into blood stain evidence that was recovered from the crime scene.
>
>Blood stain evidence existed under some over-turned lockers at the crime scene. This blood sample was collected by the police as evidence and marked for property identification purposes as #47444. Although noted both on the crime scene diagram, and, as being confiscated as evidence, defense counsel never inquired into it or asked that it be subjected to scientific and DNA analysis.
>
>This blood evidence was destroyed before being analyzed for DNA but after the trial was complete. If defense counsel had followed up on this evidence at the appropriate time, DNA analysis could have shown that it came from Petitioner, thus aiding a defense that, although he may have been present, Petitioner did not murder Richard Myers and was, himself, wounded during the events that transpired.

In reviewing these claims, the district court noted that Henness had never raised them in state court, although he could have presented them during his state post-conviction proceedings. Consequently, the court concluded that Henness had procedurally defaulted the claims. *Henness*, 2007 WL 3284930, at *10, *15-16.

As the basis of his Rule 60(b)(6) motion, Henness now argues that recent changes in the law would establish cause to excuse his procedural default. The Supreme Court traditionally has held that a prisoner has no constitutional right to an attorney in state post-conviction proceedings and, consequently, the prisoner cannot claim constitutionally ineffective assistance of counsel in those proceedings. *Coleman v. Thompson*, 501 U.S. 722, 752 (1991). Further, any inadequate assistance by counsel in state post-conviction proceedings cannot constitute cause to excuse a habeas petitioner's procedural default of his claims in state court. *Id.* at 757.

In *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012), the Supreme Court carved out a "narrow exception" to *Coleman*, holding that, under some circumstances, ineffective assistance of counsel during initial-review state collateral proceedings can establish cause for a petitioner's procedural default of an ineffective assistance of trial counsel claim. The petitioner's procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance of trial counsel if state law required that the claim of ineffective assistance of trial counsel be raised first in an initial-review post-conviction proceeding and no counsel assisted the

petitioner during that proceeding or counsel's assistance in that proceeding was ineffective. *Id.* at 1320. In *Trevino v. Thaler*, the Court interpreted *Martinez* to hold that a federal habeas court can find cause to excuse a petitioner's procedural default where: (1) the ineffective assistance of trial counsel claim was "substantial"; (2) the "cause" consists of a lack of counsel or ineffective counsel during the state collateral-review proceeding; (3) the state collateral-review proceeding was the initial review of the petitioner's ineffective-assistance-of-trial-counsel claim; and (4) state law requires that the ineffective-assistance-of-trial-counsel claim be raised in the initial review post-conviction proceeding. 133 S. Ct. 1911, 1918 (2013). In *Trevino*, the Court modified the fourth element to situations where state law does not provide most defendants with a meaningful opportunity to present claims of ineffective assistance of trial counsel on direct appeal. *Id.* at 1921.

Henness now maintains that the district court's dismissal of the ineffective-assistance-of-trial-counsel claims from his habeas petition as procedurally defaulted resulted from the ineffective assistance of his state post-conviction counsel. Based on *Martinez* and *Trevino*, he argues that he now can establish cause to excuse those defaults and receive a merits review of those claims. However, it "is well established that a change in decisional law is usually not, by itself, an 'extraordinary circumstance' meriting Rule 60(b)(6) relief." *McGuire*, 738 F.3d at 750 (citing *Stokes v. Williams*, 475 F.3d 732, 735 (6th Cir. 2007)). Moreover, neither *Martinez* nor *Trevino* sufficiently changes the balance of the factors for consideration under Rule 60(b)(6) to warrant relief. *McGuire*, 738 F.3d at 749-51. Further, this court has concluded that *Martinez* does not apply in Ohio because Ohio permits ineffective-assistance-of-counsel claims on direct appeal. *Moore v. Mitchell*, 708 F.3d 760, 785 (6th Cir.), *cert. denied*, 134 S. Ct. 693 (2013). Without deciding the issue, this court also has questioned whether *Trevino* applies in Ohio. *McGuire*, 738 F.3d at 751-52.

Even if *Trevino* does apply in Ohio, that decision, combined with other potential factors, provides an insufficient basis for Rule 60(b)(6) relief. Henness argues that his case contains the required extraordinary circumstances under Rule 60(b)(6) because of the merits of his underlying ineffective assistance of counsel claims. In order to establish ineffective assistance of counsel, Henness must establish that his counsel's performance was deficient and that he suffered

No. 13-3934　　　　　　　　*Henness v. Bagley*　　　　　　　　Page 8

prejudice from this deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). For a successful claim under *Trevino*, Henness must demonstrate a "substantial" claim as to both portions of the *Strickland* test. *McGuire*, 738 F.3d at 752. He is unable to meet that standard.

Henness essentially argues that his counsels' performance was deficient because they failed to properly investigate his case. Counsel is expected to conduct a thorough investigation of the law and facts underlying the case, and any limitation on counsels' investigation must be supported by reasonable professional judgment. *Strickland*, 466 U.S. at 690-91; *Couch v. Booker*, 632 F.3d 241, 246 (6th Cir. 2011). "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 690-91). Counsels' "purportedly strategic decision is not objectively reasonable when [they] fail[] to investigate [their] options and make a reasonable choice between them." *Foster v. Wolfenbarger*, 687 F.3d 702, 708 (6th Cir. 2012) (quoting *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005)).

Henness has presented evidence showing that his counsel conducted a truncated and incomplete investigation into his case. On June 30, 1992, David Bodiker and Joseph Edwards were appointed to represent Henness. Although Henness's trial did not begin until November 5, 1993, counsel did little investigation or preparation for his case. Additionally, their relationship with Henness, as well as between themselves, was filled with difficulties. It is undisputed that Bodiker was lead counsel, and Edwards avers that Bodiker prevented him from performing any significant work on the case until shortly before trial. Bodiker believed that Henness would plead guilty and, therefore, it was unnecessary to prepare for trial. Consequently, despite Edwards's suggestion, Bodiker refused to hire an investigator for the case. Henness maintains that Bodiker only devoted approximately eleven hours to investigating his case until trial was imminent, and this effort largely consisted of reviewing evidence provided by the prosecution. Pursuant to Bodiker's direction, Edwards also did not conduct any investigation into Henness's case. Edwards avers that Bodiker and Henness had a very poor relationship characterized by a lack of respect and trust, which was partly responsible for Henness's decision to decline the prosecution's plea offer and proceed to trial.

No. 13-3934　　　　　　　　*Henness v. Bagley*　　　　　　　　Page 9

Even if Henness has shown that his counsels' performance was deficient, he still must demonstrate that he was prejudiced by counsels' actions (or lack thereof). In order to establish prejudice, Henness must show that a reasonable probability exists that the result would have been different but for his counsels' errors. *Strickland*, 466 U.S. at 687. Henness satisfies the prejudice prong if a reasonable probability exists that at least one juror would have struck a different balance, *Wiggins*, 539 U.S. at 537; *Peoples v. Lafler*, 734 F.3d 503, 514 (6th Cir. 2013), and he does not need to show that counsels' deficient conduct more likely than not altered the outcome in his case. *Strickland*, 466 U.S. at 693; *Peoples*, 734 F.3d at 514.

Henness cannot meet this standard. He first argues that he was prejudiced by counsels' failure to adequately investigate the crime scene evidence. A key issue in his trial was whether Henness acted with "prior calculation and design" in murdering Myers and, in order to demonstrate that he did, the prosecution presented evidence that Myers was bound and gagged at the time he was shot. As part of his Rule 60(b) motion, Henness now presents an affidavit from Gary Rini, an independent forensic-science consultant. Following a review of trial exhibits, crime scene photographs, police reports, and other evidence, Rini opines that Myers was likely bound and gagged after he died. Henness maintains that, if counsel had obtained an expert opinion similar to Rini's for use at his trial, it would have raised doubt about the reliability of the coroner's trial testimony that Myers was bound and gagged prior to death. However, Rini's opinion strains believability. No evidence exists that Myers's body was moved after he was shot, and Henness offers no explanation for why the killer would bind and gag Myers after his death. It is unlikely, much less reasonably probable, that testimony to this effect would have resulted in at least one juror concluding that Henness was not guilty.

Henness next argues that he suffered prejudice through counsels' failure to fully investigate Tabatha's background. Tabatha testified that, on the morning of Myers's disappearance, she saw her husband leave their residence with Myers in his car. Several hours later, Henness returned alone in Myers's car and in possession of checks, credit cards, and jewelry belonging to Myers. Henness eventually admitted to Tabatha and a third party, Roland Fair, that he had killed Myers.

No. 13-3934  *Henness v. Bagley*  Page 10

Despite the pertinent nature of her testimony, Tabatha was a problematic witness for the prosecution. She testified to having a long history of abusing drugs, especially crack cocaine and heroin, and she admitted to joining her husband in using Myers's personal items in various ways to obtain money for drugs. After her direct examination in Henness's trial, Tabatha fled to Texas without the prosecution's knowledge and against the trial court's directive, and she did not return for her cross-examination until a week later. In addition to being cross-examined about her decision to not timely return to court in order to complete her testimony, Tabatha admitted to having an extensive criminal history, including forgery, receiving stolen property, theft, and escape. She also acknowledged that she engaged in prostitution to pay for her drug habit.

Even with the extensive negative information that the jury received about Tabatha, Henness now argues that his counsel failed to uncover additional evidence that would have further damaged her credibility. In support of this argument, Henness largely relies on the deposition testimony of Sherry Williamson, a former friend and lover of Tabatha. She related that both of them took drugs regularly and stole to support their habit. Tabatha also sold cocaine. Tabatha supposedly admitted to Williamson that she was involved in a murder with Henness, although her version of events did not match up with the location where Myers's body was discovered. Tabatha also told Williamson that Henness was "taking the fall" for the murder. Tabatha was prone to violence with a terrible temper, and she once attacked Williamson with a knife. Henness also asserts that counsel failed to investigate Tabatha's history of suicide attempts and mental health issues, even though he had advised counsel of her history.

While this additional evidence could have cast additional doubt on Tabatha's reliability as a witness, it is unlikely to have caused any juror to reach a different decision. The evidence presented at trial regarding Tabatha's drug abuse and criminal history, plus her decision to flee prior to cross-examination, cast considerable doubt on Tabatha's credibility. The new evidence cited by Henness would have added little to further undermine her testimony. Williamson's most damaging allegation was that Tabatha admitted to being involved in a murder, but since her description of the murder did not match the events of the present case, it would have been of questionable value in impeaching Tabatha.

No. 13-3934            *Henness v. Bagley*            Page 11

Lastly, Henness argues that he suffered prejudice through the breakdown in his relationship with trial counsel, which resulted in his unwise rejection of the plea offer. Henness maintains that, if his counsel had conducted a thorough investigation, they would have provided more accurate advice about the strengths and weaknesses of the case against him. However, Henness has not demonstrated that further information would have caused him to plead guilty. While it appears that his trial counsel understood the strengths of the prosecution's case, Henness suggests that further investigation would have uncovered potential holes in their theory of his case. However, if Henness was unwilling to plead guilty with a full understanding of the prosecution's case against him, he seems unlikely to have changed his mind if he had learned of possible weaknesses in that case. Although Henness also argues that his dysfunctional relationship with counsel led to his decision to reject the plea offer, this argument is unrelated to his allegations concerning counsels' failure to conduct an adequate investigation.

## VI.

For the foregoing reasons, the district court's denial of Henness's Rule 60(b)(6) motion is **AFFIRMED**.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 13-3934

WARREN K. HENNESS,
       Petitioner - Appellant,

v.

MARGARET BAGLEY, Warden,
       Respondent - Appellee.

> **FILED**
> *Sep 08, 2014*
> DEBORAH S. HUNT, Clerk

Before: BOGGS, SILER, and SUTTON, Circuit Judges.

**JUDGMENT**

On Appeal from the United States District Court
for the Southern District of Ohio at Columbus.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION WHEREOF, it is ORDERED that the district court's denial of Henness's Rule 60(b)(6) motion is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk